# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW ELIAS, an individual, on behalf of himself and all others similarly situated and aggrieved<br><br>Plaintiff,<br><br>v.<br><br>SPOTIFY USA INC.,<br><br>Defendant/Third Party Plaintiff,<br><br>v.<br><br>THE EXECUSEARCH GROUP, LLC AND EXECUSEARCH HOLDINGS, LLC dba THE EXECUSEARCH GROUP, LLC,<br><br>Third Party Defendants, | No.: 2:20-cv-01854-JFW (ASx)<br><br>**STATEMENT OF DECISION GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF PAGA SETTLEMENT** |

## I. INTRODUCTION

On September 27, 2021, Plaintiff Matthew Elias ("Plaintiff") filed an Unopposed Motion for Approval of PAGA Settlement ("Motion") [Docket No. 116]. No parties filed an opposition to this Motion.

After considering the motion and the arguments therein, the Court GRANTS Plaintiff's Motion in its entirety for the reasons set forth below.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

Plaintiff Matthew Elias filed this action on January 22, 2020 as a putative class action and Private Attorneys General Act ("PAGA") enforcement action (the "PAGA Action") in the Los Angeles Superior Court. Plaintiff alleged that he and other independent contractors of Defendant Spotify USA Inc. ("Spotify") were misclassified as independent contractors and, as a result, were illegally denied overtime pay, meal and rest periods, minimum wages, timely and accurate wage statements, all wages owed upon separation, and reimbursement of all necessary business-related expenses. Plaintiff also alleged the same violations with respect to Spotify's non-exempt employees.

On February 26, 2020, Spotify removed the PAGA Action to federal court. Dkt. No. 1. On May 1, 2020, Spotify filed a third-party complaint against Third-Party Defendants The ExecuSearch Group, LLC and ExecuSearch Holdings, LLC dba The ExecuSearch Group, LLC (collectively, "ExecuSearch") for indemnification. Dkt. No. 29.

After the PAGA Action was filed, Plaintiff filed a second case against Spotify (and against ExecuSearch) to pursue his individual claims for wrongful termination. That case, filed in the United States District Court for the Central District of California, is entitled, *Matthew Elias v. Spotify USA Inc. et al.*, Case No. 2-20-cv-08530-JFW-AS (the "Individual Action").

On November 3, 2020, Plaintiff filed a Third Amended Complaint ("TAC") in the PAGA Action, removing class allegations, leaving Plaintiff's individual wage and hour claims and a claim for civil penalties under PAGA. Spotify challenged Plaintiff's

representation of its non-exempt employees (the "Employee Group"), arguing Plaintiff failed to exhaust administrative remedies based on his insufficient notice provided to Spotify and the California Labor and Workforce Development Agency ("LWDA") in Plaintiff's two PAGA Letters. Dkt. No. 96-1. Following briefing, on December 16, 2020, this Court ordered that Plaintiff may proceed with his pursuit of PAGA penalties on behalf of only allegedly misclassified independent contractors (the "Misclassified Group"). Dkt. No. 101.

On December 23, 2020, Plaintiff filed his Fourth Amended Complaint without any references to the Employee Group. Dkt. No. 102.

On January 29, 2021, all parties in the PAGA Action and also the Individual Action attended a mediation in an attempt to reach a global settlement. At the mediation, Plaintiff settled all claims in the PAGA Action against Spotify. More than a month after the mediation, Plaintiff settled his claims in the Individual Action, and Spotify settled its claims against ExecuSearch.

Plaintiff claims that, during the mediation, he learned facts about the nature of the other independent contractors and their services provided to Spotify, which he believes to be different from Plaintiff's position and responsibilities. Spotify argued that there were significant manageability issues in proceeding to trial on behalf of the vast majority (12 out of 16) of these other independent contractors. The Parties agreed that the PAGA settlement would include only the remaining four independent contractors who performed work for Spotify through ExecuSearch during the PAGA Period. So, as part of the settlement, the Parties filed a stipulation for Plaintiff to file his Fifth Amended Complaint ("5AC") to revise the definition of the Misclassified Group to include only independent contractors who provided services to Spotify through ExecuSearch.

So, on February 11, 2021, Plaintiff filed the operative 5AC on behalf of himself for his individual wage and hour claims and for civil penalties on behalf of the State of California and all others alleged to be misclassified as independent contractors who provided services to Spotify through ExecuSearch in California at any time during the

period beginning one year prior to Plaintiff's first PAGA Letter (the "PAGA Settlement Workers"). Dkt. No. 109.

Finally, on June 14, 2021, this Court dismissed this action without prejudice for the parties' failure to comply with the Court's Standing Order. Dkt. No. 113. By stipulation, the Parties sought relief from the Court to reopen the case to approve the PAGA portion of the settlement, which was granted. Dkt. Nos. 114, 115.

All parties in the PAGA Action have reached a settlement that will completely resolve the litigation currently pending between the Parties, including Plaintiff's representative PAGA claim filed in this case. For the reasons set forth herein, the PAGA settlement is approved.

### III.   LEGAL STANDARDS

"To compensate for the lack of '[a]dequate financing of essential labor law enforcement functions,' the California legislature enacted PAGA to permit aggrieved employees to act as private attorneys general to collect civil penalties for violations of the Labor Code." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 430 (9th Cir. 2015). California Labor Code section 2699(a) provides:

> Notwithstanding any other provision of law, any provision of [the Labor Code] that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees . . . .

In essence, PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees." *Iskanian v. CLS Trans. Los Angeles, LLC*, 59 Cal. 4th 348, 360 (2014). A plaintiff who brings a PAGA claim "does so as the proxy or agent

of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). Because the "plaintiff represents the same legal right and interest as state labor law enforcement agencies, . . . a judgment in an employee's action under [PAGA] binds not only that employee but also the state labor law enforcement agencies." *Id*. In addition, the judgment "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id*.

If the employer employs one or more employees, the civil penalty is $100 for each aggrieved employee per pay period for the "initial violation" and $200 for each aggrieved employee per pay period for each "subsequent violation." Cal. Lab. Code § 2699(f)(2). However, the heightened $200 penalty does not apply until the defendant has been notified that it is violating a Labor Code section by the Labor Commissioner or any court. *Bernstein v. Virgin America, Inc.*, 3 F.4th 1127, 1144 (9th Cir. 2021); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008).

Seventy-five percent of the civil penalties are distributed to the LWDA, and the remainder is distributed to the aggrieved employee(s) who initiated the claim. Cal. Lab. Code § 2699(i). When PAGA claims are settled, the trial court must "review and approve" the settlement. Cal. Lab. Code § 2699(l). In so doing, the court must consider whether the proposed "PAGA settlement is fair and adequate in view of the purposes and policies of the statute." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016). Those purposes and policies include "benefit[ting] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Id*. at 1132–33.

### IV.  DISCUSSION

As set forth in the settlement agreement filed with the Court, the parties have agreed to resolve Plaintiff's representative PAGA claim for $4,000, with $3,000 (seventy-five percent) going to the LWDA and $1,000 (twenty-five percent) going to four PAGA Settlement Workers, including Plaintiff. The parties assert that these amounts are "fair and reasonable" and declare that the settlement is the product of hard-fought litigation over

about 1.5 years, including motion practice, exchange of formal and informal discovery, and a mediation session. However, because the settlement provides a "full release" and "forever discharges" Defendant Spotify USA Inc. ("Spotify") and Third-Party Defendants The ExecuSearch Group, LLC and ExecuSearch Holdings, LLC dba The ExecuSearch Group, LLC (collectively, "ExecuSearch") from any and all PAGA claims "that were asserted or could reasonably have been asserted" in this case, (see Dkt. No. 116-1 at 9), the Court must evaluate, and ultimately approve, the settlement.

Plaintiff estimates that the amount in controversy for Plaintiff's and the other three independent contractors' PAGA claim would be between $18,000 to $22,400. To support his contention that $4,000 is fair and reasonable, Plaintiff argues that all alleged Labor Code violations would subject only to the $100 penalty, not the heightened $200 penalty, since Defendants had not been notified that they were violating a Labor Code provision by a court or the Labor Commissioner. The Court agrees with this contention.

The Court further agrees that the allocation of $4,000 of the settlement to PAGA is fair and reasonable in light of the statute's mandate. The Court also notes that the amount of this allocation to PAGA is in line with allocations approved by other courts. *See e.g.*, *Davis v. Cox Communications California, LLC*, No. 16-CV-989-BAS(BLM), 2017 WL 1496407, at *1 (S.D. Cal. Apr. 26, 2017) (approving $4,000 PAGA allocation in $275,000 settlement); *Moore v. Fitness Int'l, LLC*, No. 3:12-CV-1551-LAB-NLS, 2014 WL 12571448, at *5 (S.D. Cal. Jan. 22, 2014) (approving $2,500 PAGA allocation when attorneys' fees award alone amounted to $200,000); *Jack v. Hartford Fire Ins. Co.*, No. 3:09-CV-1683-MMA JMA, 2011 WL 4899942, at *6 (S.D. Cal. Oct. 13, 2011) (approving $3,000 PAGA allocation in $1,200,000 settlement); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *2 (S.D. Cal. June 1, 2010) (approving $3,000 PAGA allocation in $1,000,000 settlement); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (approving $1,500 PAGA allocation in $1,026,000 settlement); *In re Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 579 (App. 4th Dist. 2010) ("[T]he trial court did not abuse its discretion in

approving a settlement which does not allocate any damages to the PAGA claims."). Given both the above case law and relevant facts, a $4,000 PAGA allocation is fair and reasonable.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff's Unopposed Motion for Approval of PAGA Settlement is **GRANTED**. The parties shall proceed with all terms of the settlement and file a motion to dismiss this action, with prejudice, within 90 days of this order.

**IT IS SO ORDERED.**

Dated: September 17, 2021

_____
Hon. John F. Walter
United States District Court Judge

STATEMENT OF DECISION GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF PAGA SETTLEMENT